UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD JOHNSON, #159768,

    Plaintiff,                         No. 13-14922

v.                                    District Judge Laurie J. Michelson
                                       Magistrate Judge R. Steven Whalen

DR. CLAFTON,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

On December 3, 2013, Plaintiff Ronald Johnson, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* civil rights complaint under 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs during his incarceration at the Wayne County Jail. *Docket #1*.

Before the Court is *Motion for Dismissal and/or Summary Judgment of Plaintiff's Federal Claims* [Docket #18] by Dr. Thomas Clafton ("Defendant"), filed January 12, 2015, which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that Defendant's motion be GRANTED and that the action be DISMISSED WITH PREJUDICE.

### I. BACKGROUND FACTS

Plaintiff makes the following allegations: Before being incarcerated at the Wayne

County Jail ("WCJ") on October 23, 2011, Plaintiff dislocated his jaw which caused difficulty chewing. *Complaint,* ¶¶ 1-2. At the time of his arrest, he was examined at Detroit Receiving Hospital and had a longstanding prescription for Norco #10 refilled. *Id.* at ¶¶ 3-6. Nonetheless, upon his arrival at WCJ, Defendant Thomas Clafton, a physician employed by WCJ, discontinued the Norco prescription and Plaintiff's other prescribed medications and had them replaced with Tylenol and Naproxen. *Id.* at ¶ 7. As a result, Plaintiff experienced ongoing and worsening jaw pain over the next few months, despite making repeated requests for stronger pain medication and adequate treatment *Id.* at ¶¶ 8-9.

Plaintiff also alleges that in December, 2011, he developed an ulcer on the outside of his right ankle. *Id.* at ¶ 11. Despite his requests for treatment, Defendant did not examine him until the following month when the ulcer became infected. *Id.* at ¶¶ 13-14. Defendant prescribed Reflex and Bactrim, but the ulcer did not "completely" heal. *Id.* at ¶ 16. Although Plaintiff wrote to WCJ medical services, Dr. Clafton did not treat him again until "mid-summer" 2012, by which time, Plaintiff had developed a second ulcer on the other side of the same ankle. *Id.* at ¶¶ 17-18. Defendant refused to provide any care for the newer ulcer but instead have Plaintiff gave "some gauze and bandages" and told him to care for the ulcer himself. *Id.* at ¶ 20. Defendant also discontinued Plaintiff's pain medication. *Id.* at ¶ 21. Plaintiff's pain medication was reinstated in September, 2012 after he filed a grievance *Id.* at ¶ 22. Plaintiff states that as a result of Defendant's failure to treat the leg ulcers for "a year," he was immediately hospitalized upon a February, 2013 transfer to the MDOC. *Id.* at ¶ 23. He states that upon the transfer, he was hospitalized for seven months and for six of

the seven months, received antibiotic treatment. *Id.* at ¶ 24.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial

of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III.   DISCUSSION

#### A.  The Personal Capacity Claims

Plaintiff claims that Defendant was deliberately indifferent to his chronic pain and ankle condition in violation of the Eighth Amendment's proscription against cruel and unusual punishment. Defendant argues that the alleged deficiencies in Plaintiff's treatment do not rise to the level of an Eighth Amendment violation. *Defendant's Brief,* 7, *Docket #18.* Defendant notes that over the course of Plaintiff's incarceration at WCJ, he received 57 prescriptions for multiple medical conditions and was seen over 35 times by various medical treaters, including Defendant. *Id.*

The Supreme Court has held that Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble,* 429 U.S. 97, 103; 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2002). Under the

objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* Deliberate indifference may be established by showing an interruption of a prescribed plan of treatment, or a delay in medical treatment. *Id.*; *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992).

However, mere negligence or misdiagnosis of an ailment does not rise to the level of a constitutional violation. *Estelle,* 429 U.S. at 106; *Comstock,* 273 F.3d at 703. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th cir. 1976). *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999), citing *Estelle v. Gamble, supra*, 97 S.Ct. at 292 ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition"). The degree of harm or pain that a patient may suffer as the result of negligence does not in itself convert medical malpractice into a constitutional claim for deliberate indifference. In *Gabehart v. Chapleau,* 1997 WL 160322, *2 (6th Cir.1997), the Sixth Circuit stated:

> "It is clear, in hindsight, that [plaintiff] was misdiagnosed on several occasions and that, as a result, his course of treatment was inadequate and he suffered considerably. It may even be the case, as [plaintiff's] expert witnesses testified, that the treatment [plaintiff] received fell below professional standards. *Misdiagnoses, negligence, and malpractice are not, however, tantamount to*

*deliberate indifference*." (Emphasis added).

The medical records created before, during, and after Plaintiff's WCJ incarceration show that his conditions were "sufficiently serious" to satisfy the objective prong of an Eighth Amendment violation. Records created just prior to Plaintiff' arrest show that he was scheduled for orthopedic surgery on November 7, 2011. *Response,* 33-34 of 49. An April, 2012 letter by Department of Veterans Affairs ("VA") to WCJ personnel states that Plaintiff had been treated for peripheral neuropathy, peripheral vascular disease, hepatitis C, diabetes, and Chronic Obstructive Pulmonary Disorder ("COPD"). *Id.* at 20. Pre-incarceration medical records show that he was prescribed Vicodin. *Id.* at 21. MDOC records created after his February, 2013 transfer from WCJ to MDOC show that he was treated for leg ulcers and in the early months of 2014, was prescribed a "bite guard" for a Temporomandibular Joint Disorder ("TMJ") . *Id.* at 32.

Plaintiff's allegations involve (1) Defendant's refusal to prescribe narcotic pain medication for the jaw condition and/or joint problems and, (2) the allegedly inadequate treatment for the leg ulcers. However, Plaintiff cannot show that Defendant's alleged actions or failure to act amounted to deliberate indifference. Plaintiff faults Defendant for discontinuing a prescription for Norco but acknowledges that he was prescribed other pain medication in its place. *Response* at 7-8. Plaintiff characterizes Defendant's withdrawal of the prescribed narcotics as arbitrary. *Id.* However, a medical examination made 14 days after his arrest (noting a history of illicit drug sale and abuse) was essentially normal except

for lower right extremity swelling. *Defendant's Exhibit 5*; *see also WCJ Health Assessment Policy, Defendant's Exhibit 8* (medical examination by WCJ staff properly includes queries regarding drug abuse).

Plaintiff's contention that Defendant was deliberately indifferent to his medical condition is further undermined by extensive treatment he received for various conditions during his incarceration at WCJ. Records created the day of the arrest showing that he was allowed to continue prescriptions for an enlarged prostate, COPD, GERD, and hypertension. *Defendant's Exhibit 2*. Plaintiff acknowledges that he received Naproxen for pain relief. *Response* at 9. He admits that during his incarceration at WCJ, "he was prescribed medication for most of his ailments." *Id.* at 8. The WCJ records state that Plaintiff regularly received non-narcotic pain medication from the date of his incarceration. *Defendant's Exhibit 3*. Plaintiff acknowledges that after filing a grievance in the summer of 2012, narcotic pain medication (as well as the previously administered non-narcotic pain medication) was prescribed from August 28, 2012 forward. *Id.* Moreover, the records for the months preceding the grievance show that Plaintiff was prescribed pain medication on a regular basis. *Id.*

The allegations regarding the treatment for leg ulcers are also subject to dismissal. Plaintiff alleges, in effect, that after some cursory treatment he was given some gauze and bandages and told to fend for himself. *Complaint* at ¶ 20. However, the WCJ medical records show that Plaintiff's first leg ulcer was examined on December 11, 2011. *Defendant's Exhibit 3*. January, 2012 treating records state that Plaintiff was treated for the

30-year chronic leg ulcer condition with oral and topical antibiotics. *Id.* In March, 2012 Dr. Clafton examined the ankle and at the same appointment prescribed (or re-prescribed)10 medications. *Id.* The following month, the leg was examined and dressed. *Id.* Plaintiff was examined twice in May, 2012. *Id.*

Moreover, Plaintiff's allegation that Defendant withheld leg ulcer treatment as of the beginning of September, 2012 as "punishment" for successfully grieving the lack of narcotic pain medication is contradicted by records showing that Plaintiff was prescribed oral antibiotics and support stockings for the ulcer condition on September 14, 2012 and received topical medications for the ulcers in October and November, 2012. *Id.* Plaintiff's claim that he was given some bandages on one occasion and directed to treat himself also stands at odds with his later admission that he was given fresh bandages by nursing staff on a daily basis. *Response* at 3. It bears repeating that Plaintiff's claim that Defendant was deliberately indifferent to his medical condition is particularly weak, given that over the course of the 16-month incarceration, Plaintiff was prescribed numerous prescriptions and received regular treatment for a plethora of chronic conditions. *Defendant's Exhibit 3.* Even assuming that some aspect of Plaintiff's care fell below professional standards and that as a result, the longstanding ulcer condition later worsened, he cannot show that Defendant was at any time deliberately indifferent to his medical care. *Gabehart, supra,* at *2.

### B. Qualified Immunity and the Official Capacity Claims

Plaintiff's failure to show a constitutional violation also entitles Defendant to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 818, 172 L.Ed.2d 565

(2009)(*citing Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). Likewise, to the extent that Plaintiff's claims against Defendant Clafton in his official capacity are construed against the policies of WCJ or the County of Wayne, the absence of a constitutional violation by Defendant Clafton forecloses municipal liability.  "If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983." *Watkins v. City of Battle Creek,* 273 F.3d 682, 687 (6th Cir.2001) (*citing City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)).

While I am not unsympathetic to the Plaintiff's ongoing health problems, he has at most stated a disagreement with the treatment provided, or perhaps medical negligence. He has not made out a claim for deliberate indifference.

## IV.   CONCLUSION

For these reasons, I recommend that Defendant's motion [Docket #18] be GRANTED and that the action be DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this

Report and Recommendation. *Willis v Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen (14) days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

/s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date: July 14, 2015

### Certificate of Service

I certify that a copy of this Order was served upon parties of record on July 14, 2015 via electronic or postal mail.

/s/A. Chubb
DEPUTY CLERK