UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD JOHNSON,

 Plaintiff,

v.

THOMAS CLAFTON,

 Defendant.

Case No. 13-14922
Honorable Laurie J. Michelson
Magistrate Judge R. Steven Whalen

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [18] AND GRANTING PLAINTIFF'S MOTION TO APPOINT COUNSEL [28]**

Following Plaintiff Ronald Johnson's arrest in October 2011, he was detained at the Wayne County Jail while awaiting trial. Johnson says that during his pretrial detention—sixteen months in all—Defendant Dr. Thomas Clafton, the jail's medical director, was deliberately indifferent to his severe pain and infected ulcers. Clafton disagrees and seeks summary judgment. Magistrate Judge R. Steven Whalen, to whom all pre-trial matters have been referred, recommends granting Clafton's motion. Johnson objects. This Court finds that the Magistrate Judge's recommendation and Clafton's motion rests in significant part on a document that is not evidence or, at least, not admissible evidence. Without this document's support, Clafton cannot completely carry his summary-judgment burden. Accordingly, the Court will grant in part and deny in part Clafton's motion.

**I.**

**A.**

As Clafton has moved for summary judgment, the Court views the summary-judgment record and draws reasonable inferences from that record in the light most favorable to the non-

moving party, Johnson. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

As far as the Complaint goes (as will be discussed, Clafton's summary-judgment response brief seems to add claims), this case involves only Johnson's claim that Clafton was deliberately indifferent to (1) his pain and (2) an infection resulting from skin ulcers.

Regarding pain, prior to his arrest, Johnson had been prescribed Norco—a narcotic pain reliever—for a dislocated jaw. (Dkt. 1, Compl. Ex. A, Stmt. of Facts ¶¶ 2, 6.)[1] But upon his arrival at the Wayne County Jail, Dr. Clafton "suddenly, and before the pain in . . . Johnson's jaw had subsided[,] . . . discontinued the Norco . . . and replaced [it] with Tylenol and Naproxen." (Stmt. of Facts ¶ 7.) Although the record does not indicate who prescribed them, Johnson continued to receive non-narcotic, prescription pain medication: he was prescribed one of Naprosyn (or the non-brand-name Naproxen), Robaxin ("used to relieve the discomfort caused by acute (short-term), painful muscle or bone conditions"),[2] or Tylenol-Codeine on eleven different dates during his 16-month stay at the Wayne County Jail. (Dkt. 18, Def.'s Mot. for Summ. J. Ex. 3 at PgID 72–75, Prescription Log.) Johnson, however, maintains that these pain medications were not strong enough to reduce severe pain attributable to his jaw (and knee and back). (Stmt. of Facts ¶¶ 8, 9, 22.) On one occasion, Clafton did prescribe Johnson a narcotic pain mediation (Lortab, i.e., hydrocodone/acetaminophen) (Prescription Log at 3), but Johnson says that this was only after he filed a complaint with the sheriff who then directed Clafton to reinstate his pain medications (Stmt. of Facts ¶ 22).

---

[1] A verified complaint, such as Johnson's, is treated as an affidavit for purposes of summary judgment. *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).
[2] Throughout this opinion, unless otherwise specified, medication use is as provided by the National Library of Medicine website found at www.ncbi.nlm.nih.gov.

As for Johnson's leg ulcers (open sores on his skin), the record suggests that they are a result of poor blood flow through the veins in his legs. (*See* Def.'s Mot. Ex. 7, Mar. 27, 2012 Treatment Note). Apparently for this reason, Johnson was prescribed compression stockings about a month into his detention at the Wayne County Jail. (Prescription Log at 3.)

Nonetheless, in December 2011, Johnson developed an ulcer on the outside of his right ankle which became infected by January 2012. (Stmt. of Facts ¶¶ 11–13.) Clafton apparently did not evaluate Johnson until March 2012, at which point he diagnosed Johnson with an infection. (Mar. 27, 2012 Treatment Note.) Clafton prescribed two antibiotics to combat the infection, Keflex and Bactrim. (*Id.*; Prescription Log at 1.) He also prescribed mineral oil, but it is not entirely clear that this was a skin treatment because some months later Johnson was prescribed mineral oil for constipation. (*Compare* Prescription Log at 1 (indicating January 2012 prescription of mineral oil for use on lower extremity), *with* Prescription Log at 2 (indicating July 2012 prescription of mineral oil for constipation).)

Johnson took the prescriptions "religiously" but, "due to the living conditions" at the jail, "his infection never completely healed." (Stmt. of Facts ¶ 16.) Although Johnson wrote to "WJC medical services, requesting to see Dr. Clafton," Clafton did not again treat the infection until "mid-summer of 2012." (Stmt. of Facts ¶ 17.) And by that time, Johnson had developed a second ulcer, this one on the inside of the same ankle. (Stmt. of Facts ¶ 18.)

Johnson implies that at the mid-summer appointment, Clafton offered only gauze and bandages, which nurses subsequently provided (on presumably a regularly basis) during their medication rounds. (Stmt. of Facts ¶ 20; Dkt. 21, Pl.'s Resp. to Def.'s Mot. at 3.) But an electronic log of all of Johnson's Wayne County Jail prescriptions indicates that Johnson was also given compression stockings in June 2012 (and again in September and November 2012).

3

(Prescription Log at 2.) Still, largely consistent with Johnson's claim about the treatment Clafton offered, the log shows no antibiotic prescriptions following those given in March 2012 for the initial infection. (*See generally* Prescription Log.)

Johnson's ulcers remained infected, and he claims (albeit not in his verified complaint) that "from October 2012 through February[] 2013, the stench alone, from [his] leg, was so horrible that even other prisoners housed in the same cell block (4-11), complained about the smell." (Pl.'s Resp. to Def.'s Mot. at 12.) "But," says Johnson, "Dr. Clafton, who was upset with [me] for writing the [s]heriff, refused to treat [me] for [my] infection." (*Id.*)

When Johnson was transferred to the Michigan Department of Corrections in February 2013, he was "immediately placed on antibiotic treatment of six months" and ended up in the hospital for about seven months (February 14 to August 29, 2013). (Stmt. of Facts ¶ 24.) Johnson says that physicians at the hospital informed him that had he gone two more weeks without treatment, he would have died. (Pl.'s Resp. to Def.'s Mot. at 4.)

**B.**

Johnson filed this suit in December 2013. (Dkt. 1.) The Court referred all pretrial matters to Magistrate Judge R. Steven Whalen. (Dkt. 6.) In January 2015, Clafton moved for summary judgment. (Dkt. 18.) The Magistrate Judge recommends granting the motion (Dkt. 22), and Johnson objects (Dkt. 27).

**II.**

The Court is only required to review *de novo* those portions of the report and recommendation to which there are objections. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); *Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It

4

does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). But here, Johnson has filed objections to most (if not all) of the reports' findings, so the Court has elected to examine Clafton's motion for summary judgment without deference to the Magistrate Judge's report and recommendation. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."); *Thomas*, 474 U.S. at 154 ("[W]hile [§ 636(b)(1)] does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.").

This Court applies the same legal standard as did the Magistrate Judge: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### III.

### A.

Before considering the parties' dispute over whether Clafton provided constitutionally adequate treatment for Johnson's pain and infection, the Court must answer three threshold questions. Two are straightforward, the third, less so.

First, the Court must decide whether to consider allegations made for the first time in response to Clafton's summary-judgment motion. In particular, in response to Clafton's motion, Johnson sets out three bases for an Eighth Amendment claim that do not appear in his Complaint: (1) that dentists or oral surgeons have determined "that the decrepitus in his [jaw] joint [is] now so severe and advanced that the only treatment that might possibly work is a

5

surgical procedure" costing as much as $150,000 and not covered by MDOC, and that had the jaw condition been "properly cared for long ago," it could have been "treated successfully, at a much [lower] cost" (Pl.'s Resp. to Mot. Summ. J. at 4); (2) that "Clafton intentionally denied Plaintiff his much needed pain medication, 'which he had been on for at least three years,' resulting in the unnecessary and wanton infliction of more pain by forcing Plaintiff to go through withdrawal cold turkey" (*id.* at 9); and (3) that "Clafton wouldn't even allow Plaintiff to have . . . surgery that had been scheduled to be performed at [the Detroit Medical Center] on Plaintiff's knee before Plaintiff's arrest on 10/22/2011" (*id.* at 12).

As these three allegations do not appear in the Complaint, Clafton did not have fair notice that Johnson was premising inadequate-medical-care claims on them. As such, Clafton could not, and obviously did not, address them in his summary-judgment motion. It is only fair then that the Court decline to consider them in resolving that motion. *Cf. Desparois v. Perrysburg Exempted Vill. Sch. Dist.*, 455 F. App'x 659, 667 (6th Cir. 2012) ("The bar against asserting new theories at the summary-judgment-response stage is well established."); *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting Charles Alan Wright *et al.*, 10A Federal Practice and Procedure § 2723 (3d ed. 2005) for the proposition that "[a] non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion.").

Second, the Court must decide which provision of the Constitution governs Johnson's inadequate-medical-care claims. Johnson's Complaint asserts the Eighth Amendment. And Clafton and the Magistrate Judge apparently agreed that it applied. But, as a pretrial detainee (according to an online offender database, Johnson was not sentenced until February 2013), the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment's Cruel and Unusual

6

Punishment Clause, provided Johnson with constitutional protection from inadequate care for serious medical needs while at the Wayne County Jail. *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 539 (6th Cir. 2008) ("The Eighth Amendment's prohibition on cruel and unusual punishment generally provides the basis to assert a § 1983 claim of deliberate indifference to serious medical needs, but where that claim is asserted on behalf of a pre-trial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point.").

Lastly, prior to the Supreme Court's recent decision in *Kingsley v. Hendrickson*, — U.S. —, 135 S. Ct. 2466, 192 L. Ed. 2d 416 (2015), it was well-settled in the Sixth Circuit (and virtually all others, *see Saetrum v. Raney*, No. CIV. 1:13-425 WBS, 2015 WL 4730293, at *13 n.6 (D. Idaho Aug. 7, 2015)) that courts were to analyze an inadequate-medical-care claim brought by a pretrial detainee under the Due Process Clause in the same way as they would an inadequate-medical-care claim brought by a convicted prisoner under the Eighth Amendment. *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013). Thus, a pretrial detainee had to show that (1) an objective person would think he had a "serious medical need," *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976), and (2) the defendant, regardless of what an objective person would have thought, "dr[e]w the inference" that the detainee was at a substantial risk of serious harm, *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Or, more succinctly, a pretrial detainee had to show that his jailer chose to be indifferent to his serious medical need. *See Burgess*, 735 F.3d at 476.

In *Kingsley*, Michael Kingsley sued officers at the county jail where he was detained awaiting trial, claiming that the officers used force prohibited by the Due Process Clause. 135 S. Ct. at 2470. The question presented was whether, to prevail on his excessive-force claim, Kingsley had to show that the officers subjectively thought the force they used was

7

unreasonable. *Id.* In answering that question in the negative, *id.* at 2472, the Supreme Court set out a particular reading of *Bell v. Wolfish*, 441 U.S. 520 (1979), a touchstone opinion on the constitutional rights of pretrial detainees, *id.* at 2473–74. In particular, the Court explained,

> *Bell*'s focus on "punishment" does not mean that proof of intent (or motive) to punish is required for a pretrial detainee to prevail on a claim that his due process rights were violated. Rather, as *Bell* itself shows (and as our later precedent affirms), *a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose*.

*Kingsley*, 135 S. Ct. at 2473–74 (emphasis added). Further, in rejecting the officers' reliance on a pair of Eighth Amendment decisions applying a subjective standard, the Court noted that the language of the Cruel and Unusual Punishment Clause and the Due Process Clause "differs" and that "pretrial detainees (unlike convicted prisoners) cannot be punished at all[.]" *Id.* at 2475.

After *Kingsley*, it is unclear whether courts should continue to use the Eighth Amendment's deliberate-indifference standard to analyze inadequate-medical-care claims brought by pretrial detainees pursuant to the Due Process Clause. On the one hand, *Kingsley* involved only a claim of excessive force. *See Roberts v. C-73 Med. Dir.*, No. 1:14-CV-5198-GHW, 2015 WL 4253796, at *3 (S.D.N.Y. July 13, 2015) ("The decision in *Kingsley* dealt only with excessive force claims, thus the Court continues to abide by Second Circuit precedent setting forth a subjective standard for cases involving allegations of deliberate indifference to a pretrial detainee's serious medical needs, which is identical to the standard for convicted prisoners under the Eighth Amendment."). And in two post-*Kingsley* decisions (one published), our Court of Appeals has continued to apply the deliberate-indifference standard in addressing claims of inadequate medical care brought by pretrial detainees. *See Linden v. Piotrowski*, — F. App'x —, No. 14-2158, 2015 WL 5603086, at *5 (6th Cir. Sept. 24, 2015); *Baynes v. Cleland*, — F.3d —, No. 14-2235, 2015 WL 5000615, at *14 (6th Cir. Aug. 24, 2015). On the other hand,

8

neither *Linden* nor *Baynes* mentions *Kingsley*. And other judges have noted *Kingsley*'s potential effect on analyzing claims by pretrial detainees under the Due Process Clause. *Castro v. Cnty. of Los Angeles*, 797 F.3d 654, 681 (9th Cir. 2015) (Callahan, J., concurring) ("In light of *Kingsley*'s focus on the differences between the relevant constitutional provisions, we ought not apply a decision grounded in the Eighth Amendment to a claim arising under the Fourteenth Amendment. . . . [I]n my view, *Kingsley* strongly suggests that proof of actual knowledge of the risk is not required for a claim arising under the Fourteenth Amendment."); *Saetrum v. Raney*, No. CIV. 1:13-425 WBS, 2015 WL 4730293, at *11 (D. Idaho Aug. 7, 2015) ("[*Kingsley*] calls into question whether it is appropriate to borrow the Eighth Amendment standard when the claim is brought by an arrestee, not a convicted prisoner, and whether the Due Process Clause may afford greater protection than the Eighth Amendment.").

The Court need not resolve or wrestle further with this thorny issue. Regardless of whether Johnson's two claims (that Clafton provided constitutionally inadequate care for his pain and for his infection) are analyzed under an objective standard or a deliberate-indifference standard, the same outcome for both claims is warranted. *Cf. Collins v. Al-Shami*, No. 1:13-CV-01838-TWP, 2015 WL 5098533, at *8 (S.D. Ind. Aug. 31, 2015) ("Based on [*Kingsley*], Mr. Collins argues that Fourteenth Amendment claims of inadequate medical care are now analyzed using the objectively unreasonable standard, not the heightened deliberately indifferent standard. Mr. Collins position is well taken, however, the Court need not address whether *Kingsley* requires that the objectively unreasonable standard be used in this case because under either standard—deliberate indifference or objective unreasonableness—Mr. Collins's claims cannot survive summary judgment.").

**B.**

Starting with Johnson's claim that Clafton violated the Due Process Clause by refusing to provide narcotics for Johnson's severe pain, the Court finds that no reasonable jury could conclude that Clafton's decision was objectively unreasonable. The record shows that Johnson was prescribed pain medication in November and December 2011 and in March, May, June, August, September, and October 2012. (Prescription Log at 3.) Eleven prescriptions for pain in sixteen months does not suggest objectively unreasonable pain treatment.

Johnson avers that despite Tylenol (with codeine) and Naproxen, his "pain continued for months, and even intensified." (Stmt. of Facts ¶¶ 7–10.) In other words, he seems to be suggesting that it was objectively unreasonable for Clafton to fail to change pain medications that are not working. But one problem with this theory for Johnson is that he has not averred that some other pain medication would have been substantially more effective in reducing his pain (*see generally* Stmt. of Facts), and thus, his claim is arguably just a preference for narcotic pain medication over non-narcotic medication. *Cf. Greenman v. Prisoner Health Servs.*, No. 1:10-CV-549, 2011 WL 6130410, at *10 (W.D. Mich. Dec. 8, 2011) ("Plaintiff's preference for narcotics and his dissatisfaction with the non-narcotic pain medications prescribed by Dr. Gelabert falls far short of supporting an Eighth Amendment claim.").

More importantly, a review of Johnson's medical records (the few that have been produced), indicates that Johnson has a "long [history of] substance abuse" and that he had been on Vicodin and Norco for five years and was "going through withdrawal." (Def.'s Mot. Ex. 4, Nov. 8, 2011 Treatment Note; Def.'s Mot. Ex. 6, Nov. 14, 2011 Treatment Note.) In such situations, it is not objectively unreasonable for a prison physician considering a request for a narcotic pain medication to weight the scale in favor of something less addictive. *Cf. Baker v.*

*Stevenson*, 605 F. App'x 514, 518–19 (6th Cir. 2015) ("[T]he Eighth Amendment does not impose a constitutional obligation upon prison officials to enable a prisoner's substance abuse or addiction problem. Efforts to wean a prisoner off opiate or narcotic pain medication to which he has become addicted are not an unconstitutional form of punishment but a medical judgment that the long-term harms of addiction and abuse outweigh the short-term benefits of reduced subjective pain.").

In sum, Johnson was regularly prescribed pain medication, and the record does not show that Johnson's preferred narcotic medication would have been more effective. But the record does show that Johnson had abused narcotics. In these circumstances, a reasonable jury could not find that Clafton's decision to prescribe non-narcotic pain relievers was objectively unreasonable. For the same reason, a reasonable jury could not find that Clafton was deliberately indifferent to Johnson's pain in prescribing non-narcotic pain relievers.

### C.

The Court reaches a different conclusion with regard to the treatment Clafton provided for Johnson's infection.

In recommending granting Clafton's summary-judgment motion, the Magistrate Judge reasoned that Johnson's ulcers were treated with "oral and topical antibiotics" in January 2012 and that "Plaintiff was prescribed oral antibiotics . . . on September 14, 2012." (July 14, 2015 Report and Recommendation at 7–8.) In support of these findings, the Magistrate Judge relied on a document titled "Timeline of Visits with Medical Professionals at Wayne County Jail, including Dr. Clafton." (*See id.*; Def.'s Mot. Ex. 3 at PgID 71, Timeline of Visits.)

But the Timeline of Visits is not evidence. For one, it is unauthenticated and was apparently prepared by Clafton's attorney. *See Camaj v. Holder*, 625 F.3d 988, 992 (6th Cir.

11

2010) ("[U]nsupported assertions of counsel are not evidence."); *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006) ("Arguments in parties' briefs are not evidence."). And even if the Timeline is something more than mere attorney argument, it appears to be hearsay. Unlike the Prescription Log that is part of the same exhibit, nothing suggests that the Timeline was "kept in the course of a regularly conducted activity of a business" and made in the "regular practice of that activity" such that it is excluded as hearsay. *See* Fed. R. Evid. 803(6).

Even so, the Magistrate Judge's reliance on attorney argument or inadmissible evidence might not have been error had Johnson failed to object to it. *See Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994). But Johnson did object. He called the general credibility of the Timeline into question in his summary-judgment response brief and explicitly challenged two of the listed antibiotic prescriptions:

> Number 31 [of the Timeline], reflects [that Clafton] ordered the antibiotic Keflex for Plaintiff on 9/14/2012[.] Also, number 32 . . . reflects that he ordered Bactrim, another antibiotic frequently prescribed along with Keflex, on 10/28/2012. Here, Dr. Clafton is attempting to convince the Court that he attempted to treat Plaintiff's infection during the latter period of time Plaintiff was in the Wayne County Jail. However, the truth of the matter is, the only time Defendant Dr. Clafton ever ordered Keflex and Bactrim to treat Plaintiff's infection was March 12, 2012 after Plaintiff's initial infection[.]

(Pl.'s Resp. to Def.'s Mot. at 12.) The Prescription Log supports Johnson's claim: it shows no prescription for Keflex on September 13 or 14, 2012 (while showing the other prescriptions noted on the Timeline for those dates) and shows no prescription for Bactrim on October 28, 2012. (*Compare* Prescription Log at PgID 73–74, *with* Timeline of Visits at PgID 71.)

Despite the erroneous reliance on the timeline, Clafton might still be entitled to summary judgment as the Court is examining that dispositive motion anew. But in this Court's independent opinion, the summary-judgment record—as it stands—permits a reasonable jury to infer that Clafton was deliberately indifferent to Johnson's serious medical needs. First, Johnson

12

avers that after his infection did not completely subside from the antibiotics Clafton prescribed in March 2012, he wrote to "WCJ medical services, requesting to see Dr. Clafton" and that Clafton evaluated Johnson in mid-summer 2012. (Stmt. of Facts ¶ 17.) A reasonable jury could thus infer that Clafton knew that Johnson's infection was ongoing as of mid-summer 2012. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994) ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."). Second, the Prescription Log shows no prescriptions for antibiotics after March 2012. And so a reasonable jury could infer that Clafton did not prescribe antibiotics during the remainder of Johnson's stay at the Wayne County Jail, i.e., from April 2012 through early February 2013.

Coupling these two inferences, a reasonable jury could conclude that Clafton knew that Johnson had a serious medical need (an infection), but chose to not treat it with what was necessary (antibiotics). This is enough for a jury to find that Clafton was deliberately indifferent to Johnson's serious medical needs (or, under a *Kingsley* standard, that Clafton's course of treatment was objectively unreasonable).

That a reasonable jury could find that a state official violated the constitution does not typically end the summary-judgment analysis where the official raises qualified immunity. *See Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (providing that to succeed on a § 1983 claim, a plaintiff must show that (1) "a constitutional right has been violated" and (2) "that right was clearly established"). Indeed, once a defendant raises qualified immunity, it is the § 1983 plaintiff's burden to show that the constitutional right was clearly established when the defendant acted. *Webb*, 789 F.3d at 659.

13

Here, the Court does not think Clafton has adequately raised qualified immunity. He merely quotes standards governing the clearly-established prong and then argues the other prong: "Plaintiff was not deprived of any constitutional right." (*See* Def.'s Mot. at PgID 59–61.) But deliberate indifference to a pretrial detainee's serious medical needs has long been recognized as a Due Process Clause violation. *See City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 243–44 (1983). It is plausible that this rule, albeit framed at a relatively high-level of generality, *see Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 508 (6th Cir. 2012), gave fair warning to Clafton as to the lawfulness of failing to prescribe antibiotics for an infection. Therefore, the Court finds that to raise the qualified-immunity shield in this case, Clafton must do more than quote legal standards on what counts as clearly-established law.

## IV.

For the reasons given, Clafton is entitled to summary judgment on Johnson's claim that Clafton violated the Due Process Clause in treating Johnson's pain. Clafton is not entitled to summary judgment on Johnson's claim that Clafton violated the Due Process Clause in treating Johnson's infection. As noted, these are the only two claims fairly raised in the Complaint. Clafton's motion for summary judgment (Dkt. 18) is thus GRANTED IN PART and DENIED IN PART. Further, as Johnson's surviving claim potentially has merit, the Court will grant Johnson's motion to appoint counsel (Dkt. 28), conditioned upon its ability to enlist pro bono counsel.

SO ORDERED.

                                              s/Laurie J. Michelson
                                              LAURIE J. MICHELSON
                                              UNITED STATES DISTRICT JUDGE

Dated: September 30, 2015

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 30, 2015.

                                        s/Jane Johnson
                                        Case Manager to
                                        Honorable Laurie J. Michelson